UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

LIBERTY INSURANCE CORPORATION,                                    Civil Action No.:

                            Plaintiff,

   -against-                                                         **COMPLAINT**

FIRST SPECIALTY INSURANCE CORPORATION,
WESTERN BEEF RETAIL, INC., and CACTUS
HOLDINGS, INC.,

                        Defendants.
-------------------------------------------------------------------------x

**M A D A M S/S I R S:**

       Plaintiff LIBERTY INSURANCE CORPORATION ("LIC"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendants THE FIRST SPECIALTY INSURANCE CORPORATION ("First Specialty"), WESTERN BEEF RETAIL, INC. ("Western Beef"), and CACTUS HOLDINGS, INC. ("Cactus"), alleges as follows:

### JURISDICTION AND VENUE

      1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

      2.     At all times hereinafter mentioned, LIC was, and still is, a stock insurance company organized under the laws of the State of Illinois, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

      3.     At all times hereinafter mentioned, LIC was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4.      Upon information and belief, at all times hereinafter mentioned, First Specialty was, and still is, a stock insurance company organized under the laws of the State of Missouri, with its principal place of business located at 5200 Metcalf Avenue, Overland Park, KS 66202.

5.      Upon information and belief, at all times hereinafter mentioned, First Specialty was, and still is, a non-admitted insurance company that conducts business within the State of New York.

6.      Upon information and belief, at all times hereinafter mentioned, Western Beef was, and still is, a corporation organized under the laws of the State of New York, with its principal place of business located at 47-05 Metropolitan Avenue, Ridgewood, New York 11385.

7.      Upon information and belief, at all times hereinafter mentioned, Western Beef was, and still is, engaged in the grocery store business in the State of New York.

8.      Upon information and belief, at all times hereinafter mentioned, Cactus was, and still is, a corporation organized under the laws of the State of Delaware, with its principal place of business located at 47-05 Metropolitan Avenue, Ridgewood, New York 11385.

9.      Upon information and belief, at all times hereinafter mentioned, Cactus was, and still is, engaged in business as a holding company with interests in grocery stores in the State of New York.

2

10.    Upon information and belief, at all times hereinafter mentioned, Cactus and Western Beef have common management, and Cactus is a majority owner of Western Beef.

## SUBSTANTIVE ALLEGATIONS

11.    On or about June 25, 2015, Amilcar Reyes ("Reyes") commenced an action entitled Amilicar Reyes v. Bruckner Plaza Shopping Center LLC, Metro Mechanical LLC, Western Beef Retail, Inc., and Ashkenazy Acquisition Corp., Index No. 302773/2015, in the Supreme Court of the State of New York, County of Bronx (the "Underlying Action").

12.    On or about July 27, 2015, Reyes filed a Verified Amended Complaint in the Underlying Action.

13.    In the Underlying Action, Reyes alleges that, on June 3, 2015, while in the employ of Marshal Construction, Inc., who was performing construction work on the roof of the premises located at 1851 Bruckner Boulevard, Bronx, New York (the "Premises"), he fell and suffered bodily injury.

14.    In the Underlying Action, Reyes alleges that the liability for her bodily injury was caused by an act or omission of Western Beef.

15.    In the Underlying Action, Reyes alleges causes of action against the defendants sounding in negligence, N.Y. Labor Law § 200, N.Y. Labor Law § 240(1), and N.Y. Labor Law § 241(6).

3

16.     On or about October 8, 2013, Bruckner Plaza Shopping Center, LLC ("Bruckner"), as Landlord, and Western Beef, as Tenant, entered into a Lease Agreement for the Premises (the "Lease").

17.     The Lease has a fifteen (15) year term.

18.     Cactus is the Guarantor under the terms of the Lease.

19.     Pursuant to the Lease, Western Beef was required to maintain a Commercial General Liability policy with limits of $2 million per occurrence.

20.     Pursuant to the Lease, the location where the accident alleged in the Underlying Action occurred was within the Demised Premises.

21.     Pursuant to the Lease, Western Beef was solely responsible for the maintenance of the Demised Premises.

22.     The Lease provides, in relevant part, as follows:

**Section 15.01.  Indemnity.**

From and after the Possession Date, Tenant shall indemnify and defend Landlord and Landlord's lender and save both harmless from and against any suits, actions, damages, claims, judgments, costs, liabilities and expenses in connection with loss of life, bodily or personal injury or property damage arising from, or out of, any occurrence in, upon, at or from the Demised Premises and/or the Common Facilities, or the occupancy or use by Tenant of the Demised Premises or the Common Facilities, or any part thereof, or occasioned wholly, or in part, by any act or omission of Tenant, its agents, contractors, employees, servants, invitees, licensees or concessionaires, (including use of the sidewalks and Common Facilities within the Shopping Center).  In case Landlord or Landlord's lender shall, without fault on their part, be made a party to any litigation commenced by or against Tenant, then Tenant shall protect and hold Landlord and Landlord's lender harmless and shall pay all costs, expenses and reasonable

4

attorney's fees.

23.    The Lease provides, in relevant part, as follows:

**Section 15.02.  Insurance.**

(a) From and after the Possession Date, Tenant shall maintain, at its sole cost and expense (i) "Special Form" insurance coverage (or its then equivalent successor) which shall include fire, flood, earthquake and extended coverage insurance, in an amount adequate to cover one hundred percent (100%) of the cost of replacement of the Demised Premises and all furniture, fixtures, equipment, and improvements in the Demised Premises in the event of a loss and (ii) all inclusive "Commercial General Liability" insurance (or its then equivalent successor), for the Demised Premises and the Common Area in the broadest and most comprehensive forms generally available with "General Aggregate Amount and Per Occurrence Limits" of liability as set forth in Section 1.01, or the equivalent.  **Landlord and Landlord's lender shall be named as additional insureds on a primary basis under the policy providing the coverage required in item (ii) above.**  Tenant shall also obtain all insurance coverages required to operate its business at the Demised Premises including, without limitation, workers compensation coverage, if required.  If Tenant fails to procure the required insurance, Landlord may, but shall not be required to, obtain same for Tenant and Tenant shall reimburse Landlord, within ten (10) days of demand for the cost thereof as Additional Rent. (Emphasis supplied.)

24.    Upon information and belief, Western Beef, allegedly in compliance with the Lease, obtained an insurance policy from First Specialty, which included a Commercial General Liability Coverage Part, No. IRA 2000002 02, with a policy period from November 15, 2014 to November 15, 2015 (the "First Specialty Policy").

25.    Upon information and belief, the First Specialty Policy has an "Each Occurrence Limit" of $1 million.

5

26.    Upon information and belief, Cactus and Western Beef qualify as Named Insureds on the First Specialty Policy.

27.    The First Specialty Policy contains an endorsement entitled "Additional Insured – Managers Or Lessors or Premises" (the "AI Endorsement"), which provides in relevant part as follows:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:  . . . .

28.    The Designation of Premises (Part Leased to You) Schedule part of the AI Endorsement states, "As per written contract".

29.    The Name of Person or Organization (Additional Insured) Schedule part of the AI Endorsement states, "Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy."

30.    Pursuant to the AI Endorsement, Bruckner qualifies as an additional insured under the First Specialty Policy for the claims alleged in the Underlying Action.

31.    The First Specialty Policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.

6

Then, we will share with all that other insurance by the
method described in Paragraph c. below.

32.     No portion of "Paragraph b. below applies" from the First Specialty

Policy to the claims against Bruckner in the Underlying Action.

33.     Upon information and belief, the First Specialty Policy contains a

"Self-Insured Retention Endorsement," which includes a "Per Occurrence" self-insured

retention amount of $450,000 for "All Other Hazards".

34.     First Specialty has taken the position that the $450,000 self-insured

retention amount applies to Bruckner for the Underlying Action.

35.     The "Self-Insured Retention Endorsement" in the First Specialty

Policy provides, in relevant part, that "you will pay all damages and "defense costs" arising

out of each covered 'occurrence' . . ., until you have paid a total of 'self-insured retention'

amounts and 'defense costs' that exceeds the "per Occurrence All Other Hazards amount

shown in the Schedule."

36.     The "Self-Insured Retention Endorsement" in the First Specialty

Policy provides, in part, as follows:

**5. Your Responsibilities**

**a.** You shall pay all such "defense costs" as they are incurred
until you have paid "defense costs" and damages for "bodily
injury," "property damage," "personal and advertising injury,"
medical payments or any other such coverages which may be
included in the policy, that total an amount that exceeds the
applicable "self-insured retention" amount.  If any final
judgment or settlement combined with "defense costs" is less
than the "self-insured retention" amount applicable to you, we
shall have no obligation to reimburse you or pay "defense
costs" under this policy.

7

**b.** You are responsible for payment of all "self-insured retention" amounts and "defense costs" incurred in claims against all insureds under this policy, whether such insured is a named insured, deemed an insured pursuant to Section II - Who is an Insured, added as an insured pursuant to an endorsement of this policy, or you are liable as a result of entering into an "insured contract."  This requirement is effective even if no claim or "suit" is made against a named insured.

**c.** You are responsible for all claims within the "self-insured retention" amount regardless of when the claim or "suit" arises, even if claim or "suit" arises after the policy is canceled or not renewed.

37.     The First Specialty Policy defines the terms "you" and "your" as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

38.     Pursuant to the "Self-Insured Retention Endorsement" in the First Specialty Policy, Cactus and Western Beef assumed the responsibility of paying for and providing the defense and indemnity owed to additional insureds under the First Specialty until the "self-insured retention" amount is satisfied.

39.     Nothing in the "Self-Insured Retention Endorsement" in the First Specialty Policy requires additional insureds to pay for or fund the "self-insured retention" amount.

40.     LIC issued a Commercial General Liability policy, No. TB7-Z11-261472-014, with a policy period from December 10, 2014 to December 10, 2015, to Ashkenazy Acquisition Corp., as the first Named Insured (the "LIC Policy").

41.     Bruckner is a Named Insured under the LIC Policy.

42.     By letter dated October 12, 2015, LIC tendered the defense and indemnity of Bruckner for the Underlying Action to Western Beef, both based upon contractual indemnification and coverage as an additional insured.

43.     Upon information and belief, Western Beef retained the law firm of Robert E. Brown, P.C. to defend the Underlying Action.

44.     On or about September 25, 2015, in recognition of Western Beef's obligations to Bruckner, Robert E. Brown, P.C. filed a Verified Answer to Amended Complaint and Cross-Claims, dated September 9, 2015, on behalf of both Western Beef and Bruckner for the Underlying Action.

45.     Robert E. Brown, P.C.'s appearance on behalf of Bruckner in the Underlying Action came without prior notice to either Bruckner or LIC.

46.     At some point in time, Western Beef replaced Robert E. Brown, P.C. as its counsel and Robert E. Brown, P.C. simply stopped appearing on behalf of and representing Bruckner in the Underlying Action.

47.     By letter dated January 8, 2016, LIC again tendered the defense and indemnity of Bruckner for the Underlying Action to Western Beef, both based upon contractual indemnification and coverage as an additional insured.

48.     On August 10, 2016, LIC and Broadspire, the third-party administrator handling claims pursuant to the First Specialty Policy, discussed the tender of Bruckner's defense and indemnity to First Specialty for the Underlying Action.

49.     By Email dated August 10, 2016 to Broadspire, LIC inquired as follows:

> It is my understanding the you are providing defense and indemnification to Bruckner; however, I am uncertain if you accepted same based on Bruckner being a Named Insured, Additional Named Insured or due to contractual indemnity. In addition, I have attached my tender letters which were never responded to.  I am also looking for the CGL and Umbrella limits of Western Beef.

50.     By Email dated December 16, 2017, Broadspire responded as follows:

> I am sorry that I have not responded to the below, I have just provided all interested parties of your tenders and await a response which will likely not happen until the New Year.

51.     By Email dated January 3, 2017 to Broadspire, LIC inquired as follows:

> Has a decision been reached regarding my t ender of both Bruckner and Ashkenazy?
> Also, since you had already answered for Bruckner, what was the basis same?

52.     By Email dated January 23, 2017, Broadspire advised that "[t]he carrier is reviewing the leases."

53.     As of February 27, 2017, neither First Specialty nor Western Beef had responded to LIC's inquiries on the tender.

10

54.    By Email dated March 24, 2017, Broadspire responded to LIC as follows:

> I truly submit your requests on to the carrier and our client
> Western Beef, we are the claims administrators and I have no
> authority to accept or deny.  I sent this email again to Western
> Beef and the carrier.

55.    By letter dated May 18, 2017, Western Beef accepted the tender of the defense and indemnity of Bruckner subject to several conditions, including that (1) Western Beef will retain counsel to represent Bruckner, that Bruckner will waive any conflict of interest that exists with such counsel, and that Bruckner agrees that the "ultimate decisions on such matters as expert retention, trial strategy and similar issues shall be made by Western Beef and our outside counsel;" (2) Western Beef retains the right to withdraw from the defense and indemnity of Bruckner "should any evidence that the independent actions or inactions of Bruckner caused or contributed to the alleged accident or injuries;" and (3) that "[i]n the event that the injuries sustained by Plaintiff were caused by a party other than Western Beef or an employee of Western Beef, we will then re-direct this matter back to Bruckner for handling."

56.    The May 18, 2017 letter was Western Beef's first written substantive response to the tender of the defense and indemnity of Bruckner for the Underlying Action.

57.    By letter dated May 24, 2017, First Specialty responded to the tender of the defense and indemnity of Bruckner for the Underlying Action, in part, as follows:

11

Cactus Holdings, Inc. and Western Beef was issued a policy of insurance, policy of insurance, policy number IRA 2000002 02, by First Specialty Insurance Corporation. The policy of insurance was written with a liability limit of $1,000,000 per occurrence subject to a $450,000.00 Self-Insured Retention TPA administered with defense costs included. Pursuant to the terms and conditions of that policy, First Specialty Insurance Corporation agrees that Bruckner Plaza would qualify as an Additional Insured under the First Specialty Insurance Corporation policy and would owe both defense and indemnity subject to the terms and conditions of the policy issued to Cactus Holdings, Western Beef, Inc. There would be no obligation under the policy to provide reimbursement of any defense costs incurred prior to the tender. The acceptance of the tender is also subject to the terms and conditions of the Self Insured Retention included as a part of the policy issued to Cactus Holdings and Western Beef. There is no obligation on the part of First Specialty to contribute to any defense costs or settlement of this claim until that retention has been exhausted.

58. The May 24, 2017 letter was First Specialty's first written substantive response to the tender of the defense and indemnity of Bruckner for the Underlying Action.

59. By letter dated May 26, 2017 to Western Beef, and copied to First Specialty, counsel for LIC raised concerns about the conditions of Western Beef's offer to defend Bruckner, including (1) whether Western Beef was agreeing to indemnify Bruckner Plaza regardless of the limits of the First Specialty Policy because of the concern the value of the underlying claim potentially exceeds the limits of the First Specialty policy and therefore Bruckner must continue to pursue its cross-claim for contractual indemnification against Western Beef; (2) it is important that any counsel appointed to defend Bruckner in the Underlying Action recognize that its sole duty is to Bruckner, and that it must

12

vigorously pursue the cross-claims against Western Beef as long as Bruckner has any potential personal exposure; (3) under the proposed conditions, Western Beef and such outside counsel must act in a fiduciary relationship with Bruckner and to do all that is necessary to defend Bruckner, including vigorous prosecution of the cross-claim against Western Beef, noting that duty owed by an attorney to his or her client is not something that is pre-waivable; (4) the reservation of rights does not seem to have a rational basis; (5) Western Beef's proposal to reserve rights on its contractual indemnity obligation places Western Beef in conflict with Bruckner, thus giving Bruckner the right to independent counsel; and (6) Western Beef, pursuant to the Lease, was required to maintain $2 million per occurrence of Commercial General Liability coverage, and the $450,000 SIR and $1 million limits of the First Specialty policy establish that Western Beef is in breach of the lease.

60.     Western Beef was requested to respond to each of the concerns raised in the letter dated May 26, 2017; however, Western Beef failed and refused to respond to this letter.

61.     Western Beef's conditions and its failure and refusal to adequately respond to the May 26, 2017 letter, and its failure to provide a defense, although duly requested, constitutes an improper denial of its obligations under the First Specialty Policy.

62.     By letter dated August 16, 2017, First Specialty maintained its coverage position that it owes no obligations to Bruckner until the $450,000 self-insured retention has been exhausted.

13

63.     By letter dated October 16, 2017, from the law firm of McMahon, Martine & Gallagher LLP, on behalf of First Specialty, First Specialty acknowledged that Bruckner "would be entitled to both defense and indemnification coverage for the claims asserted in the [Underlying] Action as an additional insured under the FSIC Policies following the exhaustion of Western Beef's $450,000 self-insured retention obligation."

64.     In the October 16, 2017 letter, First Specialty denied any current duty to defend Bruckner.

65.     In the October 16, 2017 letter, First Specialty specifically stated as follows:

> Upon the satisfaction of the Policy's $450,000 SIR obligation, FSIC will provide Bruckner Plaza with defense and indemnification coverage on a primary basis pursuant to the terms of the "Managers or Lessors Additional Insured Endorsement" contained in the FSIC primary liability policy (the "AI Endorsement"). By its terms, the AI Endorsement, a copy of which is enclosed for your convenience, entitles Bruckner Plaza to additional insured coverage for "liability arising out of the ownership, maintenance or use of that part of the premises leased to" Western Beef.
>
> Based upon the allegations contained in Amilcar Reyes' complaint and information developed to date in the litigation, FSIC is not reserving its right to contest the extent or availability of additional insured coverage pursuant to the terms of any of the AI Endorsement's exclusions or limitations or any of the other potentially applicable exclusions contained in its Policies. If FSIC's position in this regard changes at a future point in time based upon additional information developed during the course of litigation, it will provide Bruckner Plaza with a timely and thorough explanation of the extent and reasons for any change in its coverage position.

66.     First Specialty has not issues a letter providing a change in its coverage position.

67.     Regarding "Other Insurance", the LIC Policy provides, in relevant part, as follows:

> (1)  This insurance is excess over:
>
> * * *
>
> (b)    Any other primary insurance available to you
> covering liability for damages arising out of the premises
> or operations, or the products and completed
> operations, for which you have been added as an
> additional insured by attachment of an endorsement.

68.     The term "you" is defined in the LIC Policy as referring to the Named Insureds.

69.     Based on the "Other Insurance" provisions in the First Specialty Policy and the LIC Policy, the coverage provided by LIC is excess to the coverage owed under the First Specialty Policy, including with respect to the duty to defend.

70.     As a result of Western Beef and Cactus' and/or First Specialty's breach of their duty to defend, LIC has been forced to drop down and provide a defense to Bruckner for the Underlying Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

71.     LIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "70" of this Complaint as if more fully set forth herein.

15

72.     Bruckner qualifies as and additional insureds under the First Specialty Policy for the claims alleged in the Underlying Action.

73.     First Specialty owes Bruckner a duty to defend and indemnify for the claims alleged in the Underlying Action.

74.     First Specialty's duty to defend and indemnify is primary as compared to any duty to defend owed by LIC to Bruckner.

75.     Although duly demanded, First Specialty has failed and refused to provide a primary defense and indemnification to Bruckner for the Underlying Action.

76.     LIC seeks a determination of its rights with regard to the First Specialty Policy, including a declaratory judgment that First Specialty was and is required to defend and indemnify Bruckner for the Underlying Action under the First Specialty Policy, and that such coverage applies on a primary basis as compared to coverage under the LIC Policy.

77.     LIC has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

78.     LIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "77" of this Complaint as if more fully set forth herein.

79.     As a result of First Specialty's failure to acknowledge its primary duty to defend Bruckner for the Underlying Action, LIC has incurred substantial attorneys' fees and other costs to defend Bruckner.

80.     At all times mentioned herein, First Specialty has failed and refused to acknowledge its primary coverage obligation and to reimburse LIC for costs incurred to defend and indemnify Bruckner for the Underlying Action.

81.     As a result of the foregoing, LIC is entitled to a money judgment against First Specialty in an amount equal to what LIC has incurred and will incur to defend and/or indemnify Bruckner for the Underlying Action, in an amount to be determined by the Court, plus interest.

## AS AND FOR A THIRD CLAIM FOR RELIEF

82.     LIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "81" of this Complaint as if more fully set forth herein.

83.     Upon information and belief, First Specialty is taking the position that Western Beef and Cactus are responsible for all costs incurred and with providing a defense to additional insureds under the First Specialty Policy until the "self-insured retention" amount has been paid.

84.     Assuming First Specialty's position is correct, Western Beef and Cactus are obligated to provide the defense and indemnity to Bruckner under the First Specialty Policy for the claims alleged in the Underlying Action.

85.     Assuming First Specialty's position is correct, Western Beef and Cactus' duty to defend and indemnify is primary as compared to any duty to defend owed by LIC to Bruckner.

17

86.     Assuming First Specialty's position is correct, although duly demanded, Western Beef and Cactus have failed and refused to provide a primary defense and indemnification to Bruckner for the Underlying Action.

87.     LIC seeks a determination of its rights with regard to the First Specialty Policy, including a declaratory judgment that Western Beef and Cactus were and are required to defend and indemnify Bruckner for the Underlying Action under the First Specialty Policy until the "self-insured retention" amount is paid, and that such obligation applies on a primary basis as compared to coverage under the LIC Policy.

88.     LIC has no adequate remedy at law.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

89.     LIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "88" of this Complaint as if more fully set forth herein.

90.     Assuming First Specialty's position is correct, as a result of Western Beef and Cactus' failure to acknowledge their primary duty to defend Bruckner for the Underlying Action, LIC has incurred substantial attorneys' fees and other costs to defend Bruckner.

91.     Assuming First Specialty's position is correct, at all times mentioned herein, Western Beef and Cactus have failed and refused to acknowledge their primary coverage obligation and to reimburse LIC for costs incurred to defend and indemnify Bruckner for the Underlying Action.

18

92.     Assuming First Specialty's position is correct, as a result of the foregoing, LIC is entitled to a money judgment against Western Beef and Cactus in an amount equal to what LIC has incurred and will incur to defend and/or indemnify Bruckner for the Underlying Action, in an amount to be determined by the Court, plus interest, and the attorneys' fees and other costs incurred in prosecuting this action.

**WHEREFORE**, plaintiff LIBERTY INSURANCE CORPORATION demands judgment as follows:

1.     On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY INSURANCE CORPORATION and defendant FIRST SPECIALTY INSURANCE CORPORATION with respect to their liability insurance coverage obligations for Bruckner for the Underlying Action, including a declaratory judgment that defendant FIRST SPECIALTY INSURANCE CORPORATION is required to defend and indemnify Bruckner for the Underlying Action, and that such coverage would apply on a primary basis as compared to coverage under the LIC Policy for Bruckner;

2.     On the second claim for relief, a money judgment in favor of plaintiff LIBERTY INSURANCE CORPORATION and against defendant FIRST SPECIALTY INSURANCE CORPORATION, in an amount to be determined by the Court, plus interest;

3.     On the third claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY INSURANCE CORPORATION and defendants WESTERN BEEF RETAIL, INC. and CACTUS HOLDINGS, INC. with respect

to their obligations for Bruckner for the Underlying Action, including a declaratory judgment that defendants WESTERN BEEF RETAIL, INC. and CACTUS HOLDINGS, INC. are required to defend and indemnify Bruckner for the Underlying Action, and that such obligation would apply on a primary basis as compared to coverage under the LIC Policy for Bruckner;

       4.    On the fourth claim for relief, a money judgment in favor of plaintiff LIBERTY INSURANCE CORPORATION and against defendant WESTERN BEEF RETAIL, INC. and CACTUS HOLDINGS, INC., in an amount to be determined by the Court, plus interest, and the attorneys' fees and other costs incurred in prosecuting this action; and

       5.    Granting plaintiff LIBERTY INSURANCE CORPORATION recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated:  White Plains, New York
         November 15, 2018

                       Yours, etc.,

                       JAFFE & ASHER LLP

                       By:                                  
                         Marshall T. Potashner, Esq.
                         mpotashner@jaffeandasher.com
                       Attorneys for Plaintiff
                       LIBERTY INSURANCE CORPORATION
                       445 Hamilton Avenue, Suite 405
                       White Plains, New York 10601
                       (212) 687-3000